UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROSE MARIE LEE,

          Plaintiff,

v.

CREDIT PROFESSIONAL SERVICES CORP.,
PORTFOLIO BUSINESS MANAGEMENT INC.,
SOUTHERN TIER AGENCY, INC.,
RICHARD WILLIAM CERRONE and
LAWRENCE B. BAKER,

          Defendants.

_____/

## COMPLAINT

**I.      Introduction**

    1.      This is an action for damages brought against debt collectors for violating the

Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, Driver's Privacy

Protection Act of 1994 ("DPPA"), 18 U.S.C. § 2721 *et seq.,* Michigan Regulation of Collection

Practices Act ("MRCPA"), M.C.L..§ 445.251 *et seq.,* and Michigan Occupational Code

("MOC") M.C.L. § 339.901 *et seq.,* and for invading plaintiff's privacy.

    2.      Defendants, along with other entities and individuals to be identified in discovery,

are involved in a fraudulent and ongoing scheme whereby they have conspired to use false

representations and threats to coerce the payment of money from consumers across the country

who allegedly have failed to repay small, high interest rate loans.  This scheme, and similar ones

operated by seemingly countless entities located in and around Los Angeles, California,

1

Jacksonville, Florida, Buffalo, New York, Atlanta, Georgia, Charlotte, North Carolina, and Rock Hill, South Carolina, are based on the use of a script, sometimes known as "The Shakedown" or "The Shake," that falsely threatens the consumer with litigation, derogatory credit reporting, and other adverse consequences, unless the consumer immediately makes a payment to the caller. Often times the perpetrators falsely inflate the amount of the alleged debt. Often times the consumer is falsely accused of having committed a crime.  Often times the debt is time-barred. Often times, the consumer's personal, financial and account information has been stolen, sold and resold to multiple parties, such that the caller does not own or otherwise have any right to collect the account.  Often times, the loan has been repaid or otherwise previously resolved and there is no debt owed.  When sued for violating the FDCPA, most of the entities default, accumulate default judgments, and continue to operate under a progression of limited liability companies, with listed "business" addresses that are nothing more than rented private mail boxes.

3.      The use of these unlawful debt collection practices is epidemic.  See, for example, the Complaint for Permanent Injunction and Other Equitable Relief filed on February 24, 2014 in the United States District Court, Western District of New York (Buffalo), Case No. 1:14-cv-122, by the Federal Trade Commission against Federal Check Processing, Inc. and fourteen other debt collection entities defendants.  See also the complaint filed by the United States of America against Williams Scott & Associates, LLC *et al.,* U.S. District Court, Southern District of New York, Case No. 1:14-mj-02546-UA, in which the government alleged that the defendants located in Norcross, Georgia have continuously engaged in a conspiracy to commit wire fraud and violated the FDCPA and other laws, through a loan collection scheme that is indistinguishable from the ongoing scheme being perpetrated by the defendants as alleged in this complaint.  The

United States Department of Justice, the Federal Bureau of Investigation, the Federal Trade

Commission, the Consumer Financial Protection Bureau, the attorneys general of virtually every

state, and the Better Business Bureau all have issued press releases that warn consumers about

this ongoing scam.

4.      On November 4, 2015, the Federal Trade Commission and other law enforcement

authorities around the country announced the first coordinated federal-state enforcement

initiative targeting deceptive and abusive debt collection practices. The "Operation Collection

Protection" initiative is described by the FTC as a nationwide crackdown by federal, state, and

local law enforcement authorities against collectors who use illegal tactics such as harassing

phone calls and false threats of litigation, arrest, and wage garnishment. The initiative targets

debt collectors who attempt to collect so-called phantom debts – phony debts that consumers do

not actually owe.  See www.ftc.gov/news-events/press-releases/2015**.**

5.      Even more recently, the federal government has begun to criminally indict

individuals involved in the type of scam that is described in this complaint. See, for example, the

forty-one count indictment filed on March 3, 2016 by the United States of America against Alan

Ceccarelli, in the United States District Court, Western District of New York (Buffalo), Case No.

1:16-cr-00024-EAW-HKS-1, 122, with charges that include Wire Fraud and Aggravated Identity

Theft. See also, Consumer Financial Protection Bureau v. Douglas MacKinnon et al., U.S.

District Court, Western District of New York (Buffalo), Case No. 1:16-cv-00880FPG, filed

November 2, 2016, in which the government alleges that the defendants cheated thousands of

consumers out of millions of dollars by running the same type of scam that is described in this

complaint.

II.     **Jurisdiction**

6.      This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), 18 U.S.C. §

2724(a) (DPPA), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction regarding

plaintiff's state law claims under 28 U.S.C. § 1367.  Venue in this judicial district is proper

because the pertinent events took place here.

III.    **Parties**

7.      Plaintiff Rose Marie Lee is an adult, natural person residing in Muskegon County,

Michigan.  Ms. Lee is a "consumer" and "person" as the terms are defined and used in the

FDCPA. Ms. Lee is a "person"as the term is defined and used in the DPPA. Ms. Lee is a

"consumer," "debtor" and "person" as the terms are defined and used in the MRCPA and MOC.

8.      Defendant Credit Professional Services Corp. ("CPS") is an active New York

corporation (DOS ID # 4904458), formed March 1, 2016. CPS also does business under multiple,

unregistered names, including CPS, CPSC, Credit Professional Services Group Inc., CPSG, and

CPSG Inc. CPS uses interstate commerce and the mails in a business the principal purpose of

which is the collection of debts. CPS regularly collects or attempts to collect, directly or

indirectly, debts owed or due or asserted to be owed or due another. CPS is a "debt collector" as

the term is defined and used in the FDCPA. CPS is a "regulated person" as the term is defined

and used in MRCPA. Alternatively, CPS is a "collection agency" and "licensee" as the terms are

defined and used in MOC.

9.      Defendants have registered and maintained a CPS-related internet domain that

they have used to conduct their unlawful debt collection scheme:

www.creditprofessionalservices.com. Defendants registered the domain name on April 28, 2016

through Perfect Privacy, LLC in an effort to conceal their true names and location. The domain

name links to a website that states in part: "Credit Professional Services, Inc. has furnished

unparalleled debt collection services to the greater WNY area since 2015." The website states

that CPS does business at 4408 Milestrip Road, Blasdell, New York 14219, but the address is

merely a private mailbox rented by defendants from International Hauling Freight and Logistics

LLC, doing business as The UPS Store No. 1338. The website also contains a "Privacy Policy"

that states in part: "Portfolio Business Management Inc. may collect and use Users personal

information for the following purposes: – To improve customer service. Information you provide

helps us respond to you customer service requests and support needs more efficiently."

Defendants sometimes send and receive CPS-related emails using the address

cpsginc.llp@gmail.com.

10.     Defendants have used multiple CPS-related telephone numbers to conduct their

unlawful debt collection scheme, including: 855-591-3286, 855-637-0948, 866-752-6385 and

888-261-0309. CPS also has used telephone number 716-799-0951 as a dedicated fax number,

which is the same fax number used by defendant Portfolio Business Management Inc.

11.     CPS directly and indirectly participated in the efforts to collect an alleged debt

from Ms. Lee that are described in this complaint.

12.     Defendant Portfolio Business Management Inc. ("PBM") is an active New York

corporation (DOS ID # 4493509), formed November 27, 2013. The registered address filed by

PBM with the State of New York is P.O. Box 236, Buffalo, New York 14220. PBM uses

interstate commerce and the mails in a business the principal purpose of which is the collection

of debts. PBM regularly collects or attempts to collect, directly or indirectly, debts owed or due

or asserted to be owed or due another. PBM is a "debt collector" as the term is defined and used

in the FDCPA. PBM is a "regulated person" as the term is defined and used in MRCPA.

Alternatively, PBM is a "collection agency" and "licensee" as the terms are defined and used in MOC.

13.  Defendants have registered and maintained a PBM-related internet domain that they have used to conduct their unlawful debt collection scheme: www.pbmrecovery.com. Defendants registered the domain name on May 18, 2014 through Bluehost Inc. in an effort to conceal their true names and location. The domain name links to a website that states in part: "Portfolio Business Management, Inc. has furnished unparalleled debt collection services to the greater WNY area since 2003."

14.  Defendants have used multiple PBM-related telephone numbers to conduct their unlawful debt collection scheme, including: 844-557-3767, 855-322-5811, and 855-641-1273. PBM also has used telephone number 716-799-0951 as a dedicated fax number, which is the same fax number used by defendant CPS.

15.  According to the Better Business Bureau for Upstate New York, PBM has claimed to do business at 1902 Ridge Road, Suite 114, West Seneca, New York 14224, but the address is merely a private mailbox rented by defendants from JCBS Enterprises, Inc., doing business as The UPS Store No. 4606. The BBB internet website, on a scale of A+ to F, gives PBM a rating of "F," and the consumer complaints shown on the BBB website describe the same unlawful debt collection tactics that are alleged by Ms. Lee in this complaint.

16.  PBM directly and indirectly participated in the efforts to collect an alleged debt from Ms. Lee that are described in this complaint.

17.  Defendant Southern Tier Agency, Inc. ("STA"), FEIN 20-455xxxx, is a New York corporation (DOS ID # 3336485), formed March 20, 2006. STA also does business under the unregistered name, STA Check Processing. STA uses interstate commerce and the mails in a

business the principal purpose of which is the collection of debts. STA regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. STA is a "debt collector" as the term is defined and used in the FDCPA. STA is a "regulated person" as the term is defined and used in MRCPA. Alternatively, STA is a "collection agency" and "licensee" as the terms are defined and used in MOC.

18.     STA has done business from multiple locations, including: 247 Cayuga Road, Suite 10, Buffalo, New York 14225-1900; 2265 George Urban Boulevard, Depew, New York 14043-1921; 2560 Walden Avenue, Buffalo, New York 14225-4757; and 8080 Cole Road, Colden, New York 14033-9731 (which is the residence of defendant Richard William Cerrone).

19.     Defendants have used multiple STA-related telephone numbers to conduct their unlawful debt collection scheme, including: 716-681-6450, 716-712-1446, 855-878-1740, and 888-365-6538.

20.     The Better Business Bureau for Upstate New York, on a scale of A+ to F, gives STA a rating of "F," and the consumer complaints shown on the BBB internet website describe the same unlawful debt collection tactics that are alleged by Ms. Lee in this complaint.

21.     STA directly and indirectly participated in the efforts to collect an alleged debt from Ms. Lee that are described in this complaint.

22.     Defendant Richard William Cerrone, also known as Rick Cerrone, is a natural person, age 54, purportedly residing at 8080 Cole Road, Colden, New York 14033-9731. Mr. Cerrone is an owner, officer, manager, employee and agent of defendants CPS, PBM and STA. Mr. Cerrone uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Cerrone regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Cerrone is a "debt

7

collector" as the term is defined and used in the FDCPA. Mr. Cerrone is a "regulated person" as

the term is defined and used in the MRCPA. Alternatively, Mr. Cerrone is a "collection agency"

and  "licensee" as the terms are defined and used in the MOC.

23.    Mr. Cerrone (a) created the collection policies and procedures used by CPS, PBM

and STA, and their employees and agents, in connection with their common efforts to collect

consumer debts, (b) managed or otherwise controlled the daily collection operations of CPS,

PBM and STA, (c) oversaw the application of the collection policies and procedures used by

CPS, PBM and STA, and their employees and agents, (d) drafted, created, approved and ratified

the tactics and scripts used by CPS, PBM and STA, and their employees and agents, to collect

debts from consumers, including the tactics and scripts that were used to attempt to collect an

alleged debt from Ms. Lee as stated in this complaint, (e) ratified the unlawful debt collection

practices and procedures used by CPS, PBM and STA, and their employees and agents in

connection with their common efforts to collect consumer debts, and (f) had knowledge of,

approved, participated in, and ratified the unlawful debt collection practices used by CPS, PBM

and STA, and their employees and agents, in attempts to collect an alleged debt from Ms. Lee as

stated in this complaint.

24.    Mr. Cerrone directly and indirectly participated in the efforts to collect an alleged

debt from Ms. Lee that are described in this complaint.

25.    All of the above-listed toll free telephone numbers that have been used by

defendants to conduct their unlawful debt collection scheme were obtained by defendants from

an entity named Flowroute LLC ("Flowroute"), a Nevada limited liability company, pursuant to a

Service Agreement between Flowroute and Richard Cerrone, Manager, Souther Tier Agency,

Inc., 247 Cayuga Road, Suite 10, Cheektowaga, New York 14225, 888-365-6538,

richard1062@gmail.com.

26.     Non-party Capital Recovery Services Group, LLC is ("CRSG") is an active New

York limited liability company (DOS ID # 2945840), formed August 22, 2003. CRSG uses

interstate commerce and the mails in a business the principal purpose of which is the collection

of debts. CRSG regularly collects or attempts to collect, directly or indirectly, debts owed or due

or asserted to be owed or due another. CRSG is a "debt collector" as the term is defined and used

in the FDCPA. CRSG is owned, operated and managed by defendant Richard William Cerrone.

It will need to be determined in discovery whether CRSG participated, directly or indirectly, in

the  in the efforts to collect an alleged debt from Ms. Lee that are described in this complaint.

27.     Non-party Check & Credit Reporting Inc. ("CCR") is an active New York

corporation (DOS ID # 3709344), formed August 14, 2008. CCR uses interstate commerce and

the mails in a business the principal purpose of which is the collection of debts. CCR regularly

collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or

due another. CCR is a "debt collector" as the term is defined and used in the FDCPA. CCR is

owned, operated and managed by defendant Richard William Cerrone. It will need to be

determined in discovery whether CCR participated, directly or indirectly, in the  in the efforts to

collect an alleged debt from Ms. Lee that are described in this complaint.

28.     Non-party Account Relations Group Corp. ("ARGC") is an active Florida

corporation, formed November 6, 2009. According to documents filed by ARGC with the State

of Ohio, ARGC provides "payment processing services" for debt collectors. ARGC uses

interstate commerce and the mails in a business the principal purpose of which is the collection

of debts. ARGC regularly collects or attempts to collect, directly or indirectly, debts owed or due

or asserted to be owed or due another. ARGC is a "debt collector" as the term is defined and used

in the FDCPA. ARGC is owned, operated and managed by defendant Richard William Cerrone.

It will need to be determined in discovery whether ARGC participated, directly or indirectly, in

the  in the efforts to collect an alleged debt from Ms. Lee that  are described in this complaint.

29.     Non-party National Account Management Inc. ("NAM") is an active New York

corporation (DOS ID # 4265790), formed July 2, 2012. NAM uses interstate commerce and the

mails in a business the principal purpose of which is the collection of debts. NAM regularly

collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or

due another. NAM is a "debt collector" as the term is defined and used in the FDCPA. NAM is

owned, operated and managed by defendant Richard William Cerrone. It will need to be

determined in discovery whether NAM participated, directly or indirectly, in the  in the efforts to

collect an alleged debt from Ms. Lee that are described in this complaint.

30.     Non-party Financial Processing and Reporting, Inc. ("FPR") is an active Florida

corporation, formed February 25, 2013. According to documents filed by FPR with the State of

Florida, "This is a company that deals with Payday loans Collections. We try to collect payments

on past due accounts." According to documents filed by FPR with the State of Ohio, FPR

became licensed in Ohio for the following purpose: "Phone calls to consumers on past due

debts." FPR uses interstate commerce and the mails in a business the principal purpose of which

is the collection of debts. FPR regularly collects or attempts to collect, directly or indirectly,

debts owed or due or asserted to be owed or due another. FPR is a "debt collector" as the term is

defined and used in the FDCPA. FPR is owned, operated and managed by defendant Richard

10

William Cerrone. It will need to be determined in discovery whether FPR participated, directly or indirectly, in the  in the efforts to collect an alleged debt from Ms. Lee that are described in this complaint.

31.     Defendant Lawrence B. Baker is a natural person, age 67, residing at 665 Galleon Drive, Webster, New York 14580-4031. Mr. Baker is licensed to practice law by the State of New York. Mr. Baker operates his law practice under the name "Office of Lawrence Baker, LLC," which is an active New York limited liability company, formed November 30, 2006, with a registered address of 480 Ridge Road West, 2nd Floor, Rochester, New York 14615. Mr. Baker maintains an internet domain,  www.lawrencebakerrochesterny.com, which links to an internet website. The website states that Mr. Baker's law office is located at 250 Mill Street, Rochester, New York 14614. The website also states: "The law firm of Lawrence Baker, Esq. has extensive experience in collecting accounts and/or debts . . . ." Mr. Baker's law license was suspended from June 8, 2012 to January 21, 2015 for misconduct not related to debt collection. Mr. Baker uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Baker regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Baker is a "debt collector" as the term is defined and used in the FDCPA. Mr. Baker is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr. Baker is a "collection agency" and  "licensee" as the terms are defined and used in the MOC.

32.     Mr. Baker (a) created the collection policies and procedures used by CPS, PBM, STA, and Office of Lawrence Baker, LLC, and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily

collection operations of  CPS, PBM, STA, and Office of Lawrence Baker, LLC, and their

employees and agents, (c) oversaw the application of the collection policies and procedures used

by CPS, PBM, STA, and Office of Lawrence Baker, LLC, and their employees and agents, (d)

drafted, created, approved and ratified the tactics and scripts used by CPS, PBM, STA, and

Office of Lawrence Baker, and their employees and agents, to collect debts from consumers,

including the tactics and scripts that were used to attempt to collect an alleged debt from Ms. Lee

as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used

by CPS, PBM, STA, and Office of Lawrence Baker, LLC, and their employees and agents in

connection with their common efforts to collect consumer debts, and (f) had knowledge of,

approved, participated in, and ratified the unlawful debt collection practices used by CPS, PBM,

STA, and Office of Lawrence Baker, LLC, and their employees and agents, in attempts to collect

an alleged debt from Ms. Lee as stated in this complaint.

33. Mr. Baker directly and indirectly participated in the efforts to collect an alleged

debt from Ms. Lee that are described in this complaint.

34. All defendants, and other entities to be identified in discovery and named as

additional defendants in this lawsuit, are intricately bound together and combine their efforts in a

joint and common enterprise and use concerted attempts to collect debts allegedly owed by

consumers throughout the United States. Defendants and the other entities operate collectively

and together, in such as way that they are collecting debts for the benefit of each other, and

making each participant jointly and severally for the unlawful acts of each of the other

participants.

35. An entity that itself meets the definition of debt collector is liable for the unlawful

collection activities carried out by another debt collector on its behalf. *See, e.g., Pollice v. National Tax Funding, L.P.,* 225 F.3d 379, 404-06 (3d Cir.2000); *Janetos v. Fulton Friedman & Gullace, LLP,* 825 F.3d 317, 325-26 (7th Cir.2016); *Fox v. Citicorp Credit Services, Inc.,* 15 F.3d 1507, 1516 (9th Cir.1994); *Wadlington v. Credit Acceptance Corp.,* 76 F.3d 103, 108 (6th Cir.1996); *Verburg v. Weltman, Weinberg & Reis Co., LPA et al.,* No. 1:13-cv-1328, 2016 WL 1273349, *7-8 (W.D. Mich. Mar. 28, 2016).

36.    A shareholder, owner, officer, member, manager, employee or agent of a corporate debt collector can be held liable for violating the FDCPA, without piercing the corporate veil, by being directly involved in the day-to-day operation of the company, including the training and managing of employees, reviewing or supervising the review of accounts, materially participating in the activities of the company, supervising collection activities, overseeing compliance with applicable collection laws, ratifying unlawful acts, and the like, for the reason that each such individual is himself a "debt collector" within the statutory definition, namely, each is a "person" in a business, "the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).  *See Kistner v. Law Offices of Michael P. Margelefsky, LLC,* 518 F.3d 433, 435-438 (6th Cir. 2008); *Russell v. Goldman Roth Acquisitions, LLC,* 847 F.Supp.2d 994, 1004-06 (W.D.Mich. 2012).

## IV.    Facts

37.    In and before 2009, plaintiff Rose Marie Lee became financial strapped and periodically went to local storefronts in Muskegon, Michigan and borrowed small amounts of money to make ends meet, by way of what are commonly known as payday loans. A typical loan

was in the amount of less than $400.00, to be paid back within fourteen days, plus interest accrued at an annual rate that exceeded three hundred and fifty percent. All money borrowed by Ms. Lee was used by Ms. Lee to purchase goods and services for personal, family and household purposes.

38.     Ms. Lee eventually became totally disabled, unable to work, and she allegedly failed to repay one or more of her payday loans.

39.     Any such loan that Ms. Lee allegedly failed to repay has been in default for more than six years and is no longer judicially enforceable by operation of the applicable Michigan statute of limitation. Stated differently, any and every unpaid payday loan obtained by Ms. Lee is now time-barred.

40.     Ms. Lee disputes owing any money to any entity in connection with any allegedly unpaid payday loan obtained by Ms. Lee.

41.     Ms. Lee refuses to pay any money to any entity in connection with any allegedly unpaid payday loan obtained by Ms. Lee.

42.     Defendants somehow acquired Ms. Lee's personal and financial information that had been in the possession of the payday lenders.

43.     In October of 2015, defendants and their employee and agent placed a call to Ms. Lee's cellular telephone and left a message on Ms. Lee's voice mail, falsely representing that (a) legal proceedings had been filed against Ms. Lee; (b) Ms. Lee was being charged with (i) breach of contract and (ii) defrauding a financial institution; and (c) Ms. Lee was going to be served that day with legal process at her residence or place of employment. The message advised that Ms. Lee could avoid being served with legal process by calling one of defendants' toll free telephone

numbers.

44.     Ms. Lee returned defendants' call. In the ensuing conversation, defendants' employee and agent represented to Ms. Lee that she could avoid litigation and prosecution if she paid money to defendants. Under duress, Ms. Lee provided defendants with her banking information. On October 22, 2015, defendants withdrew $191.67 from Ms. Lee's bank account. On November 24, 2015, defendants withdrew another $191.67 from Ms. Lee's bank account. The withdrawals were processed as a "debit card purchase" and were credited to the account of defendant Southern Tier Agency, Inc.

45.     In January of 2016, defendants and their employee and agent placed a call to Ms. Lee's cellular telephone and left a message on Ms. Lee's voice mail, falsely representing that (a) legal proceedings had been filed against Ms. Lee; (b) Ms. Lee was being charged with (i) breach of contract and (ii) defrauding a financial institution; and (c) Ms. Lee was going to be served that day with legal process at her residence or place of employment. The message advised that Ms. Lee could avoid being served with legal process by calling one of defendants' toll free telephone numbers.

46.     Ms. Lee returned defendants' call. In the ensuing conversation, defendants' employee and agent represented to Ms. Lee that she could avoid litigation and prosecution if she paid money to defendants. Under duress, Ms. Lee provided defendants with her banking information. On January 28, 2016, defendants withdrew $550.00 from Ms. Lee's bank account. The withdrawal was processed as a "debit card purchase" and was credited to the account of defendant Southern Tier Agency, Inc.

47.     In April of 2016, defendants and their employee and agent placed a call to Ms.

Lee's cellular telephone and left a message on Ms. Lee's voice mail, falsely representing that (a) legal proceedings had been filed against Ms. Lee; (b) Ms. Lee was being charged with (i) breach of contract and (ii) defrauding a financial institution; and (c) Ms. Lee was going to be served that day with legal process at her residence or place of employment. The message advised that Ms. Lee could avoid being served with legal process by calling one of defendants' toll free telephone numbers.

48.     Ms. Lee returned defendants' call. In the ensuing conversation, defendants' employee and agent represented to Ms. Lee that she could avoid litigation and prosecution if she paid money to defendants. Defendants stated that they were attempting to collect a unpaid debt allegedly owed by Ms. Lee in connection with a loan she allegedly had obtained from Allied Cash Advance. Defendants stated that defendants had filed a lawsuit ("Case No. 632268") against Ms. Lee to collect the alleged debt. Under duress, Ms. Lee provided defendants with her banking information. On April 14, 2016, defendants withdrew $184.75 from Ms. Lee's bank account. On May 12, 2016, defendants withdrew another $184.75 from Ms. Lee's bank account. On June 9, 2016, defendants withdrew another $184.75 from Ms. Lee's bank account. The withdrawals were processed as a "debit card purchase" and were credited to the account of defendant Southern Tier Agency, Inc.

49.     In July and August of 2016, Ms. Lee contacted defendants multiple times and requested that defendants provide her with a "paid in full" letter or similar document, as proof that the alleged debt owed by Ms. Lee to Allied Cash Advance had been satisfied by the $554.25 that defendants had taken from Ms. Lee's bank account in April, May and June of 2016.

50.     In August of 2016, defendants mailed to Ms. Lee, a "paid in full" letter dated

16

August 8, 2016, stating that that the alleged debt owed by Ms. Lee to Allied Cash Advance had

been satisfied by the $554.25 that defendants had taken from Ms. Lee's bank account in April,

May and June of 2016. A copy of the letter is attached hereto as Exhibit A.

51.    On or about July 13, 2016, defendants and their employee and agent placed a call

to Ms. Lee's cellular telephone and left the following message on Ms. Lee's voice mail: "This

message is for a Rose Marie Lee, my name is Stephanie Carter, I'm an independent law courier

contacting you on behalf of the Department of Legal Services, that is for the County Liaison's

Division for Civil Processing. I'm actually contacting here Ms. Lee, to inform you that there has

been a citation that has been issued out with the county under your name and social ending in

5315. At this time, I do have authorization to serve the legal documentation to either a home

residence as well as place of your employer. In which you will need to be notified regard this

pending matter. Obviously I did want to contact with you to make sure this is something that you

would available to sign off on. At this time, unfortunately, you are not available. If there is any

other further questions or concerns that you may have pertained to your case information, it's

very important that you contact with the filing party, and their number listed on file is going to be

866-752-6385. Your case number is going to be 800423. It is very important that you contact

with them immediately. You have now been notified."

52.    In January of 2017, defendants and their employee and agent placed a call to Ms.

Lee's cellular telephone and left a message on Ms. Lee's voice mail, falsely representing that (a)

legal proceedings had been filed against Ms. Lee; (b) Ms. Lee was being charged with (i) breach

of contract and (ii) defrauding a financial institution; and (c) Ms. Lee was going to be served that

day with legal process at her residence or place of employment. The message advised that Ms.

17

Lee could avoid being served with legal process by calling one of defendants' toll free telephone numbers.

53.     Ms. Lee returned defendants' call. In the ensuing conversation, defendants' employee and agent represented to Ms. Lee that she could avoid litigation and prosecution if she paid money to defendants. Under duress, Ms. Lee provided defendants with her banking information. On January 31, 2017, defendants withdrew $162.33 (plus a $1.00 service fee) from Ms. Lee's bank account. On March 1, 2017, defendants withdrew another $162.33 (plus a $1.00 service fee) from Ms. Lee's bank account. On March 30, 2017, defendants withdrew another $162.33 (plus a $1.00 service fee) from Ms. Lee's bank account. The withdrawals were processed as a "debit card purchase" and were credited to the account of defendant Southern Tier Agency, Inc.

54.     On April 4, 2017, defendants sent an email from cpsginc.llp@gmail.com to Ms. Lee's email address. Attached to defendants' email was a letter in MS Word format, acknowledging the defendants' withdrawals of money from Ms. Lee's bank account on January 31, 2017, March 1, 2017 and March 30, 2017. A copy of the letter is attached hereto as Exhibit B.

55.     The April 4, 2017 letter that was emailed from defendants to Ms. Lee purports to be from "Credit Professional Services Group Inc., 4408 Milestrip Road, Blasdell, New York 14219." However, metadata contained within the letter states that the letter actually was created by "Lawrence Baker Law Office, LLC" on April 4, 2017 at 11:10 a.m.

56.     In April of 2017, defendants and their employee and agent placed a call to Ms. Lee's cellular telephone and left a message on Ms. Lee's voice mail, falsely representing that (a)

legal proceedings had been filed against Ms. Lee; (b) Ms. Lee was being "charged" with (i) breach of contract and (ii) defrauding a financial institution; and (c) Ms. Lee was going to be served that day with legal process at her residence or place of employment. The message advised that Ms. Lee could avoid being served with legal process by calling one of defendants' toll free telephone numbers.

57.     Ms. Lee returned defendants' call. In the ensuing conversation, defendants' employee and agent represented to Ms. Lee that she could avoid litigation and prosecution if she paid money to defendants. Under duress, Ms. Lee provided defendants with her banking information. On April 14, 2017, defendants withdrew $184.75 from Ms. Lee's bank account. On May 12, 2017, defendants withdrew another $184.75. The withdrawals were processed as a "debit card purchase" and were credited to the account of defendant Southern Tier Agency, Inc.

58.     In June of 2017, defendants and their employee and agent placed a call to Ms. Lee's cellular telephone and left a message on Ms. Lee's voice mail, falsely representing that (a) legal proceedings had been filed against Ms. Lee; (b) Ms. Lee was being "charged" with (i) breach of contract and (ii) defrauding a financial institution; and (c) Ms. Lee was going to be served that day with legal process at her residence or place of employment. The message advised that Ms. Lee could avoid being served with legal process by calling one of defendants' toll free telephone numbers.

59.     Ms. Lee returned defendants' call. In the ensuing conversation, defendants' employee and agent represented to Ms. Lee that she could avoid litigation and prosecution if she paid money to defendants. Under duress, Ms. Lee agreed to pay money to defendants, in four equal monthly payments of $247.28 each, to begin on June 30, 2017.

60.     On June 21, 2017, Ms. Lee did an internet search regarding Credit Professional Services Corp. and found multiple consumer complaints, stating that the company was operating a scam to coerce the payment of money from consumers by falsely threatening consumers with litigation and prosecution. Ms. Lee became worried that she too was a victim of a scam.

61.     On June 27, 2017, Ms. Lee contacted her bank and instructed her bank to take steps to prevent defendants from taking any money from Ms. Lee's account.

62.     On June 30, 2017, defendants attempted to withdraw $247.28 from Ms. Lee's bank account but Ms. Lee's bank blocked the transaction.

63.     On June 30, 2017, defendants and their employee and agent placed a call to Ms. Lee's cellular telephone, spoke with Ms. Lee, and stated  that defendants had been unable to withdraw money from Ms. Lee's bank account and threatened Ms. Lee with litigation and other consequences unless Ms. Lee immediately paid money to defendants. Ms. Lee terminated the call.

64.     On June 30, 2017, Ms. Lee made a return call to defendants at telephone number 855-591-3286. The call was answered by defendants' employee and agent who stated that her name was Carly Love at Credit Professional Services. Defendants' employee and agent represented that a lawsuit had been filed against Ms. Lee and that Ms. Lee's Case Number was 198624. Defendants' employee and agent stated that because Ms. Lee's payment was declined, Ms. Lee now was required to appear in Court and explain herself to the judge. Ms. Lee became fearful and stated that she would call back in a half hour.

65.     On June 30, 2017, Ms. Lee made another return call to defendants at telephone number 855-591-3286. The call was answered by defendants' employee and agent. Under duress,

Ms. Lee provided defendants with banking information and defendants withdrew $247.28 from the bank account. The withdrawal was processed as a "POS Debit" transaction and the funds were credited to the account of defendant Southern Tier Agency, Inc., telephone number 855-878-1740, in New York.

66.     The above-described threats and representations made by defendants and their employees and agents were false and part of a scripted and unlawful debt collection practice that is ongoing and is currently being perpetrated by defendants to extort the payment of money from thousands of consumers across the country through the use of false threats, intimidation, and unlawful harassment, often times on debts that are not owed and through the use of unlawfully obtained account and personal information.

67.     Defendants and their employees and agents failed to meaningfully identify themselves and their companies.

68.     Defendants and their employees and agents falsely represented the amount of Ms. Lee's alleged debt.

69.     Defendants and their employees and agents falsely represented and falsely implied that defendants have a legal department.

70.     Defendants and their employees and agents falsely represented and falsely implied that lawyers were involved in the efforts to collect the alleged debt.

71.     Defendants and their employees and agents falsely represented and falsely implied that lawyers would become involved in the efforts to collect the alleged debt.

72.     Defendants and their employees and agents falsely represented and falsely implied that a lawsuit was going to be filed against Ms. Lee to collect the alleged debt.

73.     Defendants and their employees and agents falsely represented and falsely implied that a lawsuit already had been filed against Ms. Lee to collect the alleged debt.

74.     Defendants and their employees and agents falsely represented and falsely implied that they would be coming to Ms. Lee's residence.

75.     Defendants and their employees and agents falsely represented and falsely implied that they would be coming to Ms. Lee's place of employment.

76.     Defendants and their employees and agents falsely represented and falsely implied that they were working for the group of attorneys that were suing Ms. Lee.

77.     Defendants did not intend to file a lawsuit against Ms. Lee in any Michigan court in efforts to collect the alleged debt.  In fact, no defendant has ever filed any lawsuit in any Michigan court to collect any debt from any person.

78.     Defendants and their employees and agents attempted to collect from Ms. Lee, and did collect from Ms. Lee, debts and money that Ms. Lee did not owe.

79.     Defendants and their employees and agents attempted to collect from Ms. Lee, and did collect from Ms. Lee, debts and money that defendants and their employees and agents had no legal right to collect.

80.     Defendants and their employees and agents wrongfully threatened to file a lawsuit against Ms. Lee to collect debts that were time-barred.

81.     The FDCPA states that it is unlawful for a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any debt.  15 U.S.C. § 1692d.

82.     The FDCPA states that it is unlawful for a debt collector to use criminal means

to harm the reputation of any person.  15 U.S.C. § 1692d(1).

83.     The FDCPA states that it is unlawful for a debt collector to place a telephone call without meaningful disclosure of the caller's identity.  15 U.S.C. § 1692d(6).

84.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the character, amount, or legal status of any debt.  15 U.S.C. § 1692e(2)(A).

85.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the compensation which may be lawfully received by any debt collector for the collection of any debt.  15 U.S.C. § 1692e(2)(B).

86.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that any individual is an attorney or that any communication is from any attorney.  15 U.S.C. § 1692e(3).

87.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.  15 U.S.C. § 1692e(4).

88.     The FDCPA states that it is unlawful for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken.  15 U.S.C. § 1692e(5).

89.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to lose any claim or defense to the payment of the debt.  15 U.S.C. § 1692e(6)(A).

90.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to become subject to any practice prohibited by the FDCPA.  15 U.S.C. § 1692e(6)(B).

91.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that the consumer committed a crime or other conduct in order to disgrace the consumer. 15 U.S.C. § 1692e(7).

92.     The FDCPA states that it is unlawful for a debt collector to communicate to any person credit information which is known or which should be known to be false.  15 U.S.C. § 1692e(8).

93.     The FDCPA states that it is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt.  15 U.S.C. § 1692e(10).

94.     The FDCPA states that it is unlawful for a debt collector to communicate in a communication with a consumer to fail to disclose that the communication is from a debt collector.  15 U.S.C. § 1692e(11).

95.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that documents are legal process.  15 U.S.C. § 1692e(13).

96.     The FDCPA states that it is unlawful for a debt collector to use any business, company, or organization name other than the true name of the debt collector's business, company, or organization.  15 U.S.C. § 1692e(14).

97.     The FDCPA states that it is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt.  15 U.S.C. § 1692f.

98.     The FDCPA states that it is unlawful for a debt collector to collect any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law.  15 U.S.C. § 1692f(1).

99.     Defendants and their employees and agents have violated the FDCPA, 15 U.S.C. §§ 1692d, 1692d(1) and (6), 1692e, 1692e(2)(A), (2)(B), (3), (4), (5), (6)(A), (6)(B), (7), (8), (10), (11), (13) and (14), and 1692f and 169f(1).

100.    Defendants and their employees and agents falsely accused Ms. Lee of having committing a crime. Ms. Lee's alleged failure to repay the alleged debt was not commit a crime under Michigan law because the Michigan Deferred Presentment Service Transactions Act, which regulates payday lending in Michigan, expressly states that the borrower in a payday loan transaction "is not subject to any criminal penalty in the event the drawer's check is dishonored." M.C.L. § 487.2158(4).

101.    Morever, M.C.L. § 750.213 states in pertinent part:

Sec. 213.  MALICIOUS THREATS TO EXTORT MONEY – Any person who shall, either orally or by a written or printed communication, maliciously threaten to accuse another of any crime or offense . . .  with intent to extort money or any pecuniary advantage whatever . . . shall be guilty of a felony, punishable by imprisonment in the state prison not more than 20 years or by a fine of not more than 10,000 dollars.

Collection of a valid, enforceable debt does not permit malicious threats of injury if payment is not made.  *People v. Maranian*, 359 Mich. 361 (1960).

102.    Defendants and their employees and/or agents attempted to criminally extort money from Ms. Lee and violated M.C.L. § 750.213.

103.     The FDCPA requires that, within five days of the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the required information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing the information mandated by 15 U.S.C. § 1692g(a).

104.     Defendants failed to provide Ms. Lee with the information it was required to provide by the FDCPA, 15 U.S.C. § 1692g(a) and thereby violated the FDCPA.

105.     Defendant and their employees, managers, owners, agents, attorneys, affiliates and co-conspirators, yet to be identified in discovery, are engaged in a organization and scheme, through which they directly and indirectly conspire to purchase and collect delinquent payday loans, as well as to collect money in connection with accounts they do not own or on which no money is owed, by using the above-described debt collection practices, in violation of the FDCPA (and various state laws, including Michigan law), and that include the use of scripted threats of faked litigation and extortion, and that include demands for payments in amounts that exceeded the amount expressly authorized by the agreement creating the debt or permitted by law.   Defendants and their employees, managers, owners, agents, attorneys, affiliates and co-conspirators, have used the same script and same unlawful tactics, to collect or attempt to collect money from more than one thousand persons.   The enterprise remains active and ongoing.

106.     Each defendant and each defendant's employees, managers, owners, agents, attorneys, affiliates and co-conspirators had knowledge of, approved of, and ratified the use of the unlawful debt collection practices that are described in this complaint.

107.     In connection with efforts to collect an alleged debt from Ms. Lee, defendants obtained personal information regarding Ms. Lee from a subscription-based internet database

(www.accurint.com) ("Accurint") operated and maintained by LexisNexis Risk Management, Inc.

108.    Alternatively, in connection with efforts to collect an alleged debt from Ms. Lee, defendants obtained personal information regarding Ms. Lee from a subscription-based internet database (www.tlo.com) ("TLO") operated and maintained by TransUnion Risk and Alternative Data Solutions, Inc.

109.    The Accurint database is derived in part from non-public motor vehicle records. Accordingly, the Drivers Privacy Protection Act applies to searches made through Accurint. Subscribers to Accurint must sign an application stating that the subscriber will comply with the DPPA.  Further, every time a subscriber logs on to Accurint, the subscriber is confronted with a screen that requires the subscriber to affirmatively state the permissible purpose under the DPPA for which the subscriber is requesting the personal information.  A hyper-link at the bottom of the screen takes the subscriber to the actual, full text of the DPPA.

110.    The TLO database is derived in part from non-public motor vehicle records. Accordingly, the Drivers Privacy Protection Act applies to searches made through TLO. Subscribers to TLO must sign an application stating that the subscriber will comply with the DPPA.  Further, every time a subscriber logs on to TLO, the subscriber is confronted with a screen that requires the subscriber to affirmatively state the permissible purpose under the DPPA for which the subscriber is requesting the personal information.  A hyper-link at the bottom of the screen takes the subscriber to the actual, full text of the DPPA.

111.    The DPPA was enacted in response to growing concerns over the ease with which stalkers and other criminals could obtain personal information from state departments of motor

27

vehicles. *Reno v. Condon*, 528 U.S. 141, 143–44, 120 S.Ct. 666, 145 L.Ed.2d 587 (2000).

112.    The DPPA states:

(a) Procurement for unlawful purpose. – It shall be unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title.

(b) False representation. – It shall be unlawful for any person to make false representation to obtain any personal information from an individual's motor vehicle record.

18 U.S.C. § 2722.

113.    The DPPA also states:

"personal information" means information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code) [and] telephone number . . . .

18 U.S.C. § 2725(3).

114.    The DPPA also states:

A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter, shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court.

18 U.S.C. § 2724(a).

115.    The DPPA enumerates the only "permissible uses" for which personal

information may be obtained.   18 U.S.C. § 2721(b).

116.    Defendants did not have a "permissible use" under the DPPA to obtain, disclose

or use personal information regarding Ms. Lee.

117.    Defendants used Accurint or TLO to obtain, disclose or use personal information

regarding Ms. Lee.

118.    Defendants made a false representation to Accurint or TLO to obtain personal

information regarding Ms. Lee that was derived from Ms. Lee's motor vehicle record.

119.    Alternatively, the entity that obtained Ms. Lee's personal information from Accurint or TLO and disclosed the personal information to defendants, made a false representation to Accurint or TLO to obtain personal information regarding Ms. Lee that was derived from Ms. Lee's motor vehicle record.

120.    It is a crime to knowingly violate the DPPA. 18 U.S.C. § 2723.

121.    Defendants knowingly obtained, disclosed and used Ms. Lee's personal information, from a motor vehicle record, for a purpose not permitted under the DPPA, and with willful or reckless disregard for the law.

122.    No defendant had a "permissible use" as the phrase is defined in the DPPA to obtain, use or disclose Ms. Lee's personal information obtained from Accurint or TLO.

123.    No defendant had Ms. Lee's consent, permission, authorization or waiver to obtain Ms. Lee's personal information from Accurint or TLO.

124.    A civil action under the DPPA may be commenced within four years after the cause of action accrues. 28 U.S.C. § 1658(a); *Rasmusson v. Chisago County,* , 991 F.Supp.2d 1065, 1079 (D.Minn. 2014).

125.    The DPPA imposes vicarious liability on principals for the acts of the actions of their agents who act with apparent authority. *Margan v. Niles,* 250 F.Supp.2d 63, 77 (N.D.N.Y. 2003).

126.    Each defendant and each defendant's employees, managers, owners, agents, affiliates and co-conspirators had knowledge of, approved of, and ratified the use of the unlawful debt collection practices that are described in this complaint.

127.    Defendants and their employees, managers, owners, agents, affiliates and co-conspirators each have intentionally and wilfully violated the FDCPA, MRCPA and MOC.

128.    The FDCPA states in part, "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged."  15 U.S.C. § 1692(e).

129.    Defendants and their employees, managers, owners, agents, affiliates and co-conspirators, to increase their business and profits, have knowingly chosen to use debt collection practices that violate the FDCPA and Michigan law, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

130.    As an actual and proximate result of the acts and omissions of defendants and their employees, managers, owners, agents, affiliates and co-conspirators, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, anxiety, loss of sleep, and suffering, for which she should be compensated in an amount to be established by jury and at trial.

**V.    Claims for Relief**

### Count 1 – Fair Debt Collection Practices Act

131.    Plaintiff incorporates the foregoing paragraphs by reference.

132.    Each defendant has violated the FDCPA.  Each defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

a)    Defendants violated 15 U.S.C. § 1692d by engaging in conduct, the natural0

consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

b) Defendants violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt;

c) Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff; and

d) Defendants violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against defendants for:

a) Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b) Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c) Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d) Such further relief as the court deems just and proper.

### Count 2 – Drivers Privacy Protection Act

133. Plaintiff incorporates the foregoing paragraphs by reference.

134. Each defendant has violated the DPPA, 18 U.S.C. § 2722(a) and (b).

**Wherefore,** plaintiff seeks judgment against defendants for:

a) Actual damages, but not less than liquidated damages in the amount of $2,500.00, pursuant to 18 U.S.C. § 2724(b)(1);

b) Punitive damages pursuant to18 U.S.C. § 2724(b)(2);

c) Reasonable costs and attorneys' fees pursuant to18 U.S.C. § 2724(b)(3);

d) An injunction prohibiting defendants from further obtaining plaintiff's personal

information, pursuant to 18 U.S.C. § 2724(b)(4);

e)    An order requiring defendants to provide plaintiff with the original and all copies

of any and all documents of any kind that contain any of plaintiff's personal

information, pursuant to 18 U.S.C. § 2724(b)(4);

f)    An injunction prohibiting defendants from disseminating plaintiff's personal

information to any other entity, pursuant to 18 U.S.C. § 2724(b)(4).

g)    An order requiring defendants to provide plaintiff with the original of all

documents pursuant to which defendants obtained plaintiff's stolen account

information, so that plaintiff may take steps to determine the identity of all entities

that have had possession of plaintiff's stolen account information and thereby

enable plaintiff to pursue those entities in efforts to protect plaintiff's credit

identify from being further compromised and harmed.

### Count 3 – Michigan Regulation of Collection Practices Act

135.    Plaintiff incorporates the foregoing paragraphs by reference.

136.    Each defendant has violated the MRCPA.  Each defendant's violations of the

MRCPA include, but are not necessarily limited to, the following:

a)    Defendants violated M.C.L. § 445.252(a) by communicating with a debtor in a

misleading or deceptive matter, including simulated judicial process;

b)    Defendants violated M.C.L. § 445.252(e) by making an inaccurate, misleading,

untrue, or deceptive statement or claim in a communication to collect a debt;

c)    Defendants violated M.C.L. § 445.252(e) by concealing or not revealing the

purpose of a communication when it is made in connection with collecting a debt;

d)      Defendants violated M.C.L. § 445.252(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened, (ii) the legal rights of a creditor or debtor, and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, or sale of the debtor's property;

e)      Defendants violated M.C.L. § 445.252(g) by communicating with a debtor without accurately disclosing the caller's identity;

f)      Defendants violated M.C.L. § 445.252(n) by using a harassing, oppressive, or abusive method to collect a debt; and

g)      Defendants violated M.C.L. § 445.252(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages pursuant to M.C.L. § 445.257(2);

b)      Treble the actual damages pursuant to M.C.L. § 445.257(2);

c)      Statutory damages pursuant to M.C.L. § 445.257(2);

d)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 445.257(2); and

e)      Equitable relief pursuant to M.C.L. § 445.257(1).

### Count 4 – Michigan Occupational Code

137.    Plaintiff incorporates the foregoing paragraphs by reference.

138.    Each defendant has violated the MOC. Each defendant's violations of the MOC include, but are not necessarily limited to, the following:

a)      Defendants violated M.C.L. § 339.915(a) by communicating with a debtor in a

33

misleading or deceptive matter, including simulated judicial process;

b)     Defendants violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

c)     Defendants violated M.C.L. § 339.915(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

d)     Defendants violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened; (ii) the legal rights of a creditor or debtor; and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, attachment or sale of the debtor's property;

e)     Defendants violated M.C.L. § 339.915(g) by communicating with a debtor without accurately disclosing the caller's identity;

f)     Defendants violated M.C.L. § 339.915(n) by using a harassing, oppressive, or abusive method to collect a debt;

g)     Defendants violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee; and

h)     Defendants violated M.C.L. § 339.918.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)     Actual damages pursuant to M.C.L. § 339.916;

b)     Treble the actual damages pursuant to M.C.L. § 339.916;

c)     Statutory damages pursuant to M.C.L. § 339.916;

d)     Equitable relief pursuant to M.C.L. § 339.916; and

e)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

### Count 5 – Invasion of Privacy

139.    Plaintiff incorporates the foregoing paragraphs by reference.

140.    Defendants' acts and omissions were undertaken willfully, maliciously, intentionally, knowingly, and in gross or reckless disregard for plaintiff's rights.

141.    Defendants' acts and omissions were extreme and outrageous.

142.    Defendants' acts and omissions have caused plaintiff's personal and financial information to be peddled around the country to con men and criminals, exposing plaintiff to repeated and future harm, credit identity theft, and other invasions of plaintiff's privacy.

143.    As an actual and proximate result of defendants' invasion of plaintiff's right to privacy, plaintiff has suffered, and will continue to suffer, actual damages for which plaintiff should be compensated.

**Wherefore**, plaintiff seeks judgment against defendants for:

a)      Actual damages;

b)      Exemplary damages;

c)      Equitable relief, including an injunction, enjoining defendants from communicating plaintiff's personal information to any entity;

d)      Costs and reasonable attorney's fees; and

e)      Such further relief as the court deems just and proper.

**Demand for Trial by Jury**

Plaintiff demands trial by jury.

Dated: July 10, 2017

/s/ Phillip C. Rogers
Phillip C. Rogers (P34356)
Kevin J. Rogers (P81303)
Attorneys for Plaintiff
40 Pearl Street, N.W., Suite 336
Grand Rapids, Michigan 49503-3026
(616) 776-1176
ConsumerLawyer@aol.com